UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 23-cv-62081-KMW

JUST BRANDS, LLC

       Plaintiff,

v.

WILTON SIMPSON, IN HIS OFFICIAL CAPACITY
AS COMISSIONER OF AGRICULTURE, AND
FLORIDA DEPARTMENT OF AGRICULTURE
AND CONSUMER SERVICES,

       Defendants.
_____/

**DEFENDANTS' 12(B) MOTION TO ABSTAIN FROM THE EXERCISE OF FEDERAL JURISDICTION AND STAY PROCEEDINGS OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND ACCOMPANYING MEMORANDUM**

Defendants Wilton Simpson, in his official capacity as the Florida Commissioner of Agriculture, and the Florida Department of Agriculture and Consumer Services (FDACS or "the Department") submit this Motion to Abstain from the Exercise of Federal Jurisdiction or, in the Alternative, Motion to Dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**INTRODUCTION**

Plaintiff Just Brands LLC d/b/a JUST CBD ("Plaintiff" or "Just Brands") offers for sale various products intended for human consumption that include ingredients derived from hemp.[1] Am. Cmplt, ¶ 2. Plaintiff advertises that its products include cannabidiol ("CBD") derived from

---

[1] https://justcbdstore.com/product-category/cbd-gummies/ (last visited November 17, 2023).

hemp.[2] Plaintiff alleges that it sells and distributes various hemp and hemp-derived products in the State of Florida, and across the United States, from its principal place of business located in Fort Lauderdale. Am. Cmplt, ¶ 2.

Florida's Hemp Law governs businesses like Plaintiff's, ensuring that, among other things, hemp products are not marketed to children. In particular, the Hemp Law prohibits distributing or selling hemp-based products "manufactured in the shape of humans, cartoons, or animals . . . [or] bear[ing] an reasonable resemblance to an existing candy product that is familiar to the public . . . [and] could be mistaken . . . especially by children." Fla. Stat. § 581.217(3)(a). And any "hemp extract products found to be mislabeled or attractive to children" are subject to immediate stop-sale orders by FDACS. Fla. Stat. § 581.217(7)(e).

On October 31, 2023, an FDACS agent visited Plaintiff's warehouse and discovered mass quantities of candy-like hemp products plainly meeting the definition of "attractive to children." FDACS issued nine stop-sale orders to Plaintiff, prohibiting Plaintiff from moving, selling, or using any of the violative goods. Exhibit A to Am. Cmplt; *see* Fla. Stat. § 581.217(7)(e) (authorizing immediate stop-sale orders on non-compliant hemp products). Plaintiff requested an administrative hearing before the Florida Division of Administrative Hearings (DOAH) pursuant to sections 120.569 and 120.57(1), Florida Statutes. *See* Defendants' Exhibit A. In its DOAH petition, Plaintiff challenged the Department's determinations: 1) that the products subject to the stop-sale orders are subject to those orders outside the State of Florida; and 2) that the products at issue are attractive to children—i.e., the factual basis for the Department's issuance of stop-sale orders. *Id*. On November 20, the Department referred Plaintiff's request for an administrative hearing to DOAH for the assignment of an independent administrative law judge, and the

---

[2] https://justcbdstore.com/product-category/cbd-gummies/ (last visited November 17, 2023).

administrative proceeding has been docketed as DOAH Case No. 23-004534.

Meanwhile, Plaintiff seeks declaratory and injunctive relief in federal court on the apparent theory that it can use its Florida-based business to store, market, and distribute across the nation hemp candy products that violate Florida law—so long as it does not sell them to Floridians. But because this dispute over an unsettled issue of state law is the subject of ongoing state administrative proceedings, this Court should abstain from exercising jurisdiction.

In any event, Plaintiff's Amended Complaint fails to state a claim for relief. The ultra vires cause of action fails because the statute on its face permits Defendant to do exactly what the Amended Complaint alleges that it did: issue stop-sale orders for hemp products that are "attractive to children." And the Commerce Clause claim fails because Plaintiff makes no allegation that Florida's Hemp Law discriminates against out-of-state vendors, favors in-state businesses, or otherwise constitutes impermissible protectionism. Nor does the Amended Complaint allege that the Hemp Law is preempted by federal law or that federal law permits Plaintiff's desired activity of interstate shipment of hemp candies. (It does not.) The third count of the Amended Complaint for "preliminary and permanent injunctive relief" is not properly a cause of action but is simply a prayer for relief without an underlying legal claim.

This Court should decline to exercise jurisdiction in deference to the ongoing state proceedings involving important and unsettled questions of state policy and state interests. In the alternative, the Court should dismiss the Amended Complaint for failing to state a claim for relief.

## BACKGROUND

### I. Florida's Hemp Law

On July 1, 2019, the State of Florida enacted its State Hemp Program to regulate the cultivation of hemp in the State. Fla. Stat. §581.217 (the "Hemp Law"). The Hemp Law requires

a license to cultivate hemp in the State of Florida, authorizes FDACS to promulgate rules to administer the state hemp program, and designates FDACS' Division of Food Safety to oversee processing, manufacturing, and retailing of hemp and hemp extract. Florida has determined that certain hemp and hemp-derived products meet the definition of food. § 500.03(1)(m)6., Fla. Stat. (2023) (including "Hemp extract as defined in s. 581.217" within the definition of Food). Separately, section 581.217 provides that Hemp extract distributed or sold in this state is subject to the applicable requirements of chapter 500, chapter 502, or chapter 580. The Florida Food Safety Act gives the Department the authority to prohibit the manufacture, sale or delivery, holding or offering for sale of any food that is adulterated or misbranded. § 500.04(1), Fla. Stat. (2023). Notably, the act of holding food products within the state is an FDACS-regulated activity.

Under Section 500.172, Florida Statutes, the Department may issue and enforce a stop-sale, stop-use, removal, or hold order when the Department finds or has probable cause to believe that any food is in violation of Chapter 500, Florida Statutes. Such an order gives notice that the articles are, or is suspected of being, in violation of law and has been detained or embargoed until permission for removal, use, or disposal is given by the Department or a court. *Id.*

In July 2023, Florida's Hemp Law was amended to include an express prohibition on hemp products defined as "attractive to children." The amended statute banned the sale of hemp-derived products that are "manufactured in the shape of humans, cartoons, or animals; manufactured in a form that bears any reasonable resemblance to an existing candy product that is familiar to the public as a widely distributed, branded food product such that a product could be mistaken for the branded product, especially by children; or containing any color additives." Fla. Stat. §581.217(3)(a). The amendment also provided that "hemp extract products found to be mislabeled or attractive to children are subject to an immediate stop-sale order." Fla. Stat. § 581.217(7)(e).

## II.     The Stop-Sale Orders on Plaintiff's Products

The relevant facts are few and straightforward, and most are undisputed. Shortly after the 2023 amendment to the Hemp Law, FDACS issued a "Notice to All Hemp Food Establishments" notifying licensed hemp purveyors that hemp-based products deemed "attractive to children" cannot be sold or distributed, and are subject to stop-sale orders. Am. Cmplt., Ex. B. Plaintiff received that notice. Three months later, acting under its authority to enforce the Hemp Law, FDACS inspected Plaintiff's business and discovered aisles and aisles of non-compliant, candy-like hemp products "determined to be Attractive to Children," and issued stop-sale orders accordingly. Am. Cmplt., Ex. A. As noted, Plaintiff has now challenged those stop-sale orders through Florida's administrative process.

## LEGAL STANDARD

In a facial challenge under Rule 12(b)(1), such as where a defendant raises abstention, a court examines whether the plaintiff's well-pled factual allegations, taken as true, establish subject-matter jurisdiction. *See MSP Recovery Claims, Series LLC v. Tower Hill Preferred Ins. Co.*, No. 1:20-CV-262-GRJ, 2021 WL 8533679, at *1 (N.D. Fla. July 13, 2021).

"[W]hen considering a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes as long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). And "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must assert 'enough facts to state a claim to relief that is plausible on its face.'" *Penton v. Centennial Bank*, No. 4:18CV-00450-AW-CAS, 2019 WL 6769661, at *2 n.2 (N.D. Fla. Nov. 22,2019) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). Courts accept the truth of a plaintiff's factual allegations, "but not labels

and legal conclusions[.]" *Id*.

## ARGUMENT

I.  **This Court should abstain from deciding this case under the *Younger* or *Pullman* abstention doctrines.**

The proper interpretation of Fla. Stat. § 581.217(3)(a) and (7)(e) presents an unsettled question of state statutory interpretation that is currently the subject of an ongoing administrative proceeding filed by Plaintiff. Resolution of this question could clear any actual (or perceived) questions regarding the Department's authority to issue the stop-sale orders and allow this Court to avoid the constitutional questions that Plaintiff poses. Having the state courts resolve the state statutory interpretation issue would also provide the surest and quickest path to a definitive resolution of the Plaintiff's objection to the stop-sale orders.

"It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001). There is no "doctrine more deeply rooted . . . in the process of constitutional adjudication." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). As such, "where possible, [the federal] courts will render decisions on federal constitutional questions unnecessary by resolving cases on the basis of state law (whether statutory or constitutional)." *Allstate*, 261 F.3d at 150; *see also Bell v. Maryland*, 378 U.S. 226, 237 (1964) (noting "policy of refusing to decide a federal question in a case that might be controlled by a state ground").

Where state law is uncertain or unsettled, however, the federal courts should abstain from deciding cases until the state courts have had an opportunity to interpret the uncertain or unsettled state law. This type of abstention—*Pullman* abstention—comports with principles of federal-state comity and helps avoid premature constitutional adjudication. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941); *cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, 79

(1997) (discussing advantages of "plac[ing] state-law questions in [state] courts equipped to rule authoritatively on them" and avoiding "friction" with state law); *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (same).

A related doctrine—*Younger* abstention—provides that federal courts should abstain from exercising jurisdiction when proceedings are currently underway in state court that implicate important state interests and provide an adequate opportunity to raise constitutional challenges. *Younger v. Harris*, 401 U.S. 37 (1971); *Middlesex County Ethics Comm'n v Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). *Younger* abstention applies not only to state court proceedings, but state administrative proceedings. *See Mastrangelo v. City of St. Petersburg*, 890 F. Supp. 1025 (M.D. Fla. 1995) ("The federal court should abstain from hearing a case when a state administrative proceeding is pending, the proceeding involves important state interests and the state proceedings afford adequate opportunity to raise constitutional issues").

Both the *Pullman* and *Younger* abstention doctrines provide a basis for this Court to abstain from exercising jurisdiction over this case.

### A. *Pullman* abstention

Two elements must be met for *Pullman* abstention to apply: (1) the case must present an unsettled question of state law; and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented. *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). Both are met here.

First, this case involves an unsettled question of state statutory interpretation. State law is unsettled where it is "susceptible" to at least one interpretation that avoids a constitutional question, *Bellotti v. Baird,* 443 U.S. 622, 628 (1979); where there is no binding state precedent on the issue, *Pustell v. Lynn Pub. Sch.,* 18 F.3d 50, 54 (1st Cir. 1994); or where there are unsettled

questions about the validity of available guidance under state law. *See Ratcliff v. Cnty. of Buncombe,* 759 F.2d 1183, 1187 (4th Cir. 1985). "[D]efinitive ruling[s]" or interpretations by state administrative agencies are not enough to settle a question of state law. *Chez Sez III Corp. v. Twp. Of Union,* 945 F.2d 628, 632 (3d Cir. 1991).

The 2023 amendment to Florida's Hemp Law providing that "Hemp extract products found to be mislabeled or attractive to children are subject to an immediate stop-sale order," Fla. Stat. § 581.217(7)(e), has never been interpreted by Florida's state courts and thus there is no binding state-court precedent on the issue. Plaintiff has disputed the Department's interpretation of the statute both in this case and in a parallel state administrative proceeding. State law is thus unsettled.

Second, the unsettled question of state law could be dispositive and avoid all constitutional questions. Plaintiff has alleged in its state administrative proceeding that the stop-sale orders cannot be applied to out-of-state sales and that its products are not "attractive to children." If it prevails on either of those claims through the state administrative adjudicatory process, the basis for the Plaintiff's constitutional claims in this Court would be eliminated.

B.   *Younger* abstention

*Younger* abstention requires courts to undertake a three-part inquiry: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Here, there is no question that Plaintiff's administrative proceeding at Florida's Division of Administrative Hearings is an ongoing state proceeding for purposes of the *Middlesex* analysis. That administrative proceeding implicates an important state interest: the state's interest in

enforcing its laws regarding hemp-extract products attractive to children. Fla. Stat. § 581.217(3)(a) (defining "attractive to children" to include products "manufactured in the shape of humans, cartoons, or animals; manufactured in a form that bears any reasonable resemblance to an existing candy product that is familiar to the public as a widely distributed, branded food product such that a product could be mistaken for the branded product, especially by children; or containing any color additives"). And Florida's administrative proceedings provide an adequate opportunity to raise constitutional challenges through state-court judicial review of orders issued by an administrative law judge. *See, e.g.*, *Florida Hosp. v. Agency for Health Care Admin.*, 823 So. 2d 844 (Fla. 1st DCA 2002) (holding that constitutional issues may be raised for the first time on appeal of an administrative order); *Mastrangelo*, 890 F. Supp. at 1025 (noting that the "adequate opportunity to address the constitutional issues" requirement is satisfied if constitutional issues may be raised in the state-court judicial review proceedings). This case therefore presents an appropriate occasion to apply *Younger* abstention.

Finally, prudential concerns also favor abstention. Even if this Court were to decide the state statutory interpretation issue to avoid the constitutional questions, this Court's interpretation would not bind the Florida courts. *See, e.g.*, *State v. Dwyer*, 332 So. 2d 333, 334 (Fla. 1976). Nor would the Eleventh Circuit's interpretation bind the Florida courts. *Id*. Litigants elsewhere in the state would remain free to precipitate a federal-state conflict on the issue. But if a state trial court addresses the issue and then one of Florida's intermediate appellate courts reviews the matter, then that state court interpretation would bind all of Florida's lower courts and avoid the possibility of federal-state conflicts. Starting in state court thus provides a shorter path to a definitive ruling. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").

Abstention now offers the best chance of promoting consistency, certainty, and finality later.

II. **Plaintiff's *ultra vires* claim fails to state a claim for relief on its face because the Hemp Law authorizes the Department to do exactly what the Amended Complaint alleges it did.**

Count I of Plaintiff's Amended Complaint alleges the Department's interpretation of the Hemp Act to authorize an immediate stop-sale order of hemp extract products found to be attractive to children is an *ultra vires* act. Am. Cmplt. ¶ 31-34. Although the basis for its claim is somewhat unclear, Plaintiff appears to allege that the Department's stop-sale orders on hemp extract products attractive to children were "arbitrary and capricious" and made "with the intent to deprive Just Brands of its liberty and property rights" protected under the state and federal constitutions. Am. Cmplt. ¶ 37

Count I fails to state a claim for relief on its face because the Department's actions were authorized by the plain language of the 2023 amendment to the Hemp Law: "Hemp extract products found to be mislabeled or attractive to children are subject to an immediate stop-sale order." Fla. Stat. § 581.217(7)(e). Although Plaintiff selectively quotes from certain other sections of the statute expressly regulating the distribution and sale of hemp-derived products in the State of Florida (Am. Cmplt. ¶ 32), the provision enforced by the stop-sale orders here contains no such purpose-based restriction.

As acknowledged in the abstention discussion above, this new statutory provision has not yet been authoritatively interpreted by Florida's state courts. But Plaintiff's allegations that the Department's interpretation of a statute it administers amounts to an "ultra vires" act warranting the intervention of a federal court to resolve this question of state law fails to satisfy the pleading standards.

Count I should be dismissed for failure to state a claim on which relief can be granted.

**III.     The Amended Complaint fails to state the elements of a § 1983 claim for a Commerce Clause violation.**

Plaintiff alleges in Count II that the Department is violating the Commerce Clause by issuing stop-sale orders on hemp products that are "attractive to children," if Plaintiff intends to sell those products to customers outside of Florida. Am. Cmplt, ¶ 42. This Count fails on multiple grounds. Even taking as true Plaintiff's allegation that it only intends to distribute the non-compliant hemp products out of state, the Amended Complaint still does not specify either a Commerce Clause problem or a federal right that could give rise to a § 1983 claim.

First, the Amended Complaint does not allege, as would be required for a Commerce Clause claim, that the Department's application of the Hemp Law favors in-state economic activity, *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986), or regulates only extraterritorial commerce, *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Rather, as here, "[w]here [a] statute regulates evenhandedly to effectuate a legitimate local public interest, . . . it will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "The antidiscrimination principle lies at the very core of the Court's dormant Commerce Clause jurisprudence." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, __ (2023) (cleaned up). The Supreme Court has reiterated "that the Commerce Clause prohibits the enforcement of state laws driven by ... economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.*

The Hemp Law's "attractive to children" provision applies evenhandedly, advances a legitimate public interest, and in no way favors in-state vendors—and Plaintiff does not allege otherwise. "Because Florida's [Hemp Law] does not discriminate against out-of-state residents, it

11

is constitutional under the Dormant Commerce Clause unless the burden it imposes on interstate commerce clearly exceeds its putative local benefits." *Locke v. Shore*, 634 F.3d 1185, 1194 (11th Cir. 2011) (citation omitted).

In any event, Plaintiff has not alleged a federal right that could support a § 1983 claim for a purported Commerce Clause violation. Neither the Supremacy Clause nor the Commerce Clause alone is enough. To sustain a § 1983 claim, a plaintiff must allege and prove both the deprivation of a federal right, and that the person who deprived that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). And there is a difference between a federal right and federal law. "[T]o seek redress through § 1983, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("[W]hether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute . . . [b]ut the inquiries overlap in one meaningful respect-in either case [the court] must first determine whether Congress intended to create a federal right.").

Plaintiff's Amended Complaint does not identify any federal statutory right that allegedly gives rise to a § 1983 claim for a Commerce Clause violation. *See Blessing*, 520 U.S. at 341 (plaintiff bringing a § 1983 action for violation of federal law must show that the federal statute "unambiguously impose[s] a binding obligation on the States . . . [and] the provision giving rise to the asserted right must be couched in mandatory . . . terms"). Failure to allege a federal right at issue is fatal to the claim.

In addition, Plaintiff does not allege that the Hemp Law's "attractive to children" provision is preempted by any federal law regarding interstate hemp sales. The Amended Complaint

identifies no act of Congress that would support preemption of Florida's Hemp Law under a Commerce Clause theory or otherwise.

The Court should dismiss Count II under Rule 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

**IV.     Count III for "Preliminary and Permanent Injunctive Relief" is not a valid cause of action.**

In Count III of the Amended Complaint, Plaintiff purports to assert a cause of action for preliminary and permanent injunctive relief. This count fails to state a claim and must be dismissed.

It is well-established that injunctive relief is not an independent cause of action, but is instead a potential *remedy* available to address the infringement of some other legal right. *See*, *e.g.*, *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127-28 (11th Cir. 2005) ("There is no such thing as a suit for a traditional injunction in the abstract") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)); *La Dolfina S.A., LLC v. Meeker*, No. 20-82231-CV, 2022 WL 6507718 at *14 (S.D. Fla. Aug. 19, 2022) (dismissing claims for preliminary and permanent injunctions because "injunctive relief is a remedy, not an independent cause of action"); *Rubin v. Life Ins. Co. of N. America*, No. 22-CV-81246-CIV, 2022 WL 20704041 at *2 (S.D. Fla. Dec. 2, 2022) (stating it is "well settled that 'an injunction is not a standalone cause of action; it is a remedy for which there must be an underlying cause of action entitling the plaintiff to such relief.' ") (quoting *Lanzone on behalf of One Way Roofing, LLC v. Boggs*, No. 18-80399-CIV, 2018 WL 11436537, at *2 (S.D. Fla. June 13, 2018)); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009) (dismissing claim for injunctive relief because "an injunction is not a cause of action but a remedy"), *aff'd*, 451 F. App'x 862 (11th Cir. 2012).

Count III fails to state a claim upon which relief can be granted and should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court enter an order dismissing this case or, alternatively, staying the proceedings pending Plaintiff's exhaustion of ongoing state administrative proceedings.

Respectfully submitted,

/s/ Daniel Nordby

| | |
|---|---|
| GENEVIEVE HALL (FBN 724661) | DANIEL E. NORDBY (FBN 14588) |
| **DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES** | DENISE M. HARLE (FBN 81977) |
| | **SHUTTS & BOWEN LLP** |
| The Mayo Building | 215 South Monroe Street, Suite 804 |
| 407 South Calhoun Street, Suite 520 | Tallahassee, Florida 32301 |
| Tallahassee, FL 32399 | (850) 241-1717 |
| (850) 245-1000 | DNordby@shutts.com |
| Genevieve.Hall@fdacs.gov | DHarle@shutts.com |

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via the Court's electronic filing system on all counsel of record on November 24, 2023.

/s/ Daniel Nordby
Attorney