UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 23-62081-CIV-WILLIAMS/HUNT

JUST BRANDS LLC,

    Plaintiff,

v.

FLORIDA DEPARTMENT OF
AGRICULTURE AND CONSUMER
SERVICES and WILTON SIMPSON, in
his official capacity as Florida
Commissioner of Agriculture,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before this Court on Plaintiff's Renewed Motion for Injunctive Relief (TRO) ("Motion"). ECF No. 24. The Honorable Kathleen M. Williams referred this Motion to the undersigned United States Magistrate Judge. ECF No. 25; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. The undersigned held an evidentiary hearing on November 28, 2023. Having thoroughly and carefully reviewed the Motion, the Response, the Reply, and the applicable law, having heard the arguments of counsel, and being otherwise fully advised in the premises, the undersigned RECOMMENDS Plaintiff's Motion be DENIED.

## LEGAL STANDARD

Plaintiff brought this action to defend its constitutional rights and challenge the State's authority to impose stop-sale orders prohibiting Plaintiff from selling hemp-derived gummy candies in shapes and colors attractive to children in out-of-state markets. There

are four necessary elements that must be shown to justify the issuance of a preliminary injunction or a TRO:

>  (1) [that there is] a substantial likelihood of success on the merits;
>
>  (2) that irreparable injury will be suffered if the relief is not granted;
>
>  (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and
>
>  (4) that the entry of the relief would serve the public interest.

*Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites."  *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr*, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (alterations, quotations, and citations omitted).

## DISCUSSION

In its Renewed Motion, Plaintiff makes the same arguments as in its previous motion—the Florida Department of Agriculture and Consumer Services ("Defendant") has infringed on Plaintiff's constitutional rights under the Commerce Clause by prohibiting Plaintiff from selling its hemp-derived gummy products outside the State of Florida.[1]  The statute at issue, Florida Statutes section 581.217(7)(e), regulates the distribution and retail sale of hemp extract and hemp-derived products, and the statute was recently

---

[1] The undersigned acknowledges Defendant has filed a 12(b) Motion to abstain from or stay proceedings or, in the alternative, to dismiss Plaintiff's complaint and accompanying memorandum.  Although some of the points made by Defendant in that filing may factor into this analysis, we make no rulings on that motion here as the full arguments made in that filing are better addressed in a determination specifically on that motion.

amended[2] to specifically include the prohibition of those products that are potentially attractive to children:

> **(3) Definitions.**--As used in this section, the term:
>
> (a) "Attractive to children" means manufactured in the shape of humans, cartoons, or animals; manufactured in a form that bears any reasonable resemblance to an existing candy product that is familiar to the public as a widely distributed, branded food product such that a product could be mistaken for the branded product, especially by children; or containing any color additives.
>
> . . .
>
> **(7) Distribution and retail sale of hemp extract.--**
>
> . . .
>
> (e) Hemp extract distributed or sold in violation of this subsection is subject to s. 500.172 and penalties as provided in s. 500.121. Hemp extract products found to be mislabeled or attractive to children are subject to an immediate stop-sale order.

§ 581.217(3)(a) and § 581.217(7)(e), Fla. Stat. (2023).

Plaintiff contends Defendant has issued stop-sale orders in reliance on an overbroad interpretation of the statute and has improperly prevented Plaintiff from selling products in out-of-state markets that do not have similar guidelines.[3] Plaintiff asserts this has caused irreparable injury to its business through a loss of the market share, customers, revenue, and goodwill.

The undersigned addresses the arguments as to each element of the TRO in turn below.

---

[2] The amendment was signed into law on July 1, 2023, with an effective date of October 1, 2023.

[3] Plaintiff conceded during testimony at the evidentiary hearing that the products at issue do violate the statute's guidelines in-state.

3

(1) <u>There is a substantial likelihood of success on the merits.</u>

Plaintiff's arguments hang on Defendant purportedly violating Plaintiff's constitutional rights under the Commerce Clause. The Dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). "To determine whether a regulation violates the Dormant Commerce Clause, we apply one of two levels of analysis." *Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844, 846 (11th Cir. 2008). "[T]he two ways a law can violate the dormant Commerce Clause are (1) by discriminating against interstate commerce or (2) by unduly burdening interstate commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1244 (11th Cir. 2012).

In the first test, we consider whether the regulation directly discriminates against interstate commerce or favors in-state economic interests. If the regulation does either, it is invalid unless it "advance[s] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Islamorada*, 542 F.3d. at 846 (quoting *Bainbridge v. Turner*, 311 F.3d 1104, 1109 (11th Cir. 2002)). This Court finds Section 581.217(7)(e) does not directly discriminate against Plaintiff's business as the law "does not effect 'simple protectionism,' but 'regulates evenhandedly' by prohibiting all . . . retailers from selling their products . . . without regard to whether the [product], the containers, or the sellers are from outside the State." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471–72 (1981). The statute prohibits Plaintiff, as well as all similar

4

sellers, from distributing or selling hemp-based gummy products that are attractive to children.

"[I]f the law or regulation advances a legitimate local interest and has only indirect effects on interstate commerce," we move on to the second test of the analysis that requires the application of the balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). *Fla. Transp. Servs.*, 703 F.3d at 1244. The *Pike* balancing test provides that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. "Under this test, we must first determine whether 'a legitimate local purpose' for [the regulation] exists," and, if it does, "we weigh the local benefits of enforcing the statute against the burdens imposed on interstate commerce." *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Florida Dep't of Health*, 50 F.4th 1126, 1142 (11th Cir. 2022). This Court can invalidate a statute "[o]nly if the burdens on interstate commerce clearly exceed the local benefits." *Id.* (citing *Fla. Transp. Servs.*, 703 F.3d at 1244).

"[A] State's power to regulate commerce is never greater than in matters traditionally of local concern." *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670, (1981) (plurality opinion). Statutes that "touch upon safety" have traditionally remained in place as under the State's power to regulate. *Norwegian Cruise Line*, 50 F.4th at 1144 (quoting *Kassel*, 450 U.S. at 670). Where the "safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Id.*

5

At this stage in the proceedings, it would appear the State of Florida may have acted within its power to regulate commerce by placing a restriction on the sale and distribution of hemp-based gummies that are attractive to children. It is not a universal ban. In that respect, the burden the State has placed on interstate commerce is relatively minor because it allows hemp-based gummies to be sold and distributed across state lines *as long as* those gummies do not look like candy that is attractive to children. *Clover Leaf*, 449 U.S. at 472. The State has asserted an arguably legitimate local interest in imposing safety measures on items that may entice children.

Plaintiff also attempts to argue the statute applies solely to sales of violative products and not their distribution. Because it is selling only to out-of-state buyers, Plaintiff argues, it is complying with the statute. However, the plain language of the statute appears to contemplate and prohibit distribution and movement of such products within the State of Florida, not just their sale. Against this factual and legal background, the undersigned finds Plaintiff has not met the heavy burden on the first element to show a *substantial* likelihood of success on its claim.

(2) <u>Irreparable injury will be suffered if the relief is not granted.</u>

As to the second element, Plaintiff asserts it will suffer irreparable harm without the imposition of a preliminary injunction because Defendant's actions are having a detrimental effect on Plaintiff's business and causing a loss of customers, goodwill, and a share in out-of-state markets not subject to the same restrictions. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). "The key word in this

consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

An irreparable injury that necessitates injunctive relief "must be neither remote nor speculative, but actual and imminent." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007).  In addition to economic losses, "the loss of customers and goodwill is an irreparable injury" in cases where a party provides evidence of specific numbers of customer losses.  *Klein v. Oved*, No. 22-80160-CIV-MARRA, 2023 WL 7129942, at *2 (S.D. Fla. June 22, 2023) (citing *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005)) (noting the record evidence in *BellSouth* established specific numbers of customer losses).  During testimony, Plaintiff did establish relatively specific figures of economic loss.  However, those figures, even coupled with non-specific allegations of loss of customers and goodwill, cannot alone establish irreparable injury. *See id.*

This Court finds Plaintiff has not carried its burden of showing irreparable harm requiring the extraordinary entry of injunctive relief.  It is uncontested Plaintiff knew at least by July 2023 of the amendment to section 581.271 to include a prohibition on products "attractive to children."  Plaintiff also had reason to know its products—the majority of which are manufactured bearing "resemblance to . . . existing candy product[s] . . . familiar to the public"—would be subject to immediate stop-sale orders.  § 581.217(3)(a) and § 581.217(7)(e), Fla. Stat. (2023).  Rather than participating in the proposed amendment process or asking for official guidance on the matter, Plaintiff

7

continued to operate as if it could distribute concededly violative products out-of-state, in addition to—albeit inadvertently—selling at least one product within the state.[4]  In the months between July and the present, Plaintiff had time to prevent or repair any potential harm.  Its choice not to do so does not now constitute a reason for injunctive relief. [5]

> (3) <u>The threatened injury outweighs the harm the relief would inflict on the non-movant AND (4) the entry of the relief would serve the public interest.</u>

When considering whether to issue a preliminary injunction, "the third and fourth factors 'merge' when, as here, the [g]overnment is the opposing party." *Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1237 (S.D. Fla. 2021) (quoting *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020)) (internal quotation marks omitted).  Therefore, this Court discusses the last two elements simultaneously.

As discussed above, Plaintiff's threatened injury is the unjust loss of its business and customers and damage to its reputation.  The undersigned finds that Plaintiff has not met its burden of showing the balance of harms weighs in its favor.  At least at this stage, it appears the State's interest in applying safety measures to the hemp-based industry weighs more heavily than the harm that may result from Plaintiff's continued, unrestricted operation of its business. To some degree, Plaintiff's harms are self-inflicted and stem from the continued operation of the distribution and sale of products Plaintiff had reason

---

[4] The Court acknowledges the testimony of Plaintiff's chief operating officer that he sought guidance informally by asking unidentified government agents for clarity, but even taken as true, this is not enough given the ample official channels he could have engaged with to ensure his compliance with the statute.

[5] Plaintiff contends between 80-85% of its business is conducted out of state, 90% of which is related to hemp-derived gummies in shapes, colors, and flavors prohibited by the State of Florida as being attractive to children.  The Court notes that relocating any products acquired prior to the stop-sale order to an out-of-state location owned by the business would not appear to violate the statute and may solve many issues related to this motion.

to know would probably be subject to a stop-sale order at some point in the future. In imposing the restrictions on what kinds of gummies may be sold and distributed within the state and which may not, the State of Florida asserts it serves the public interest of protecting minors and preventing the marketing and sale of hemp-derived products to children.

## CONCLUSION

Based on the foregoing, the undersigned hereby RECOMMENDS Plaintiff's Renewed Motion for Injunctive Relief (TRO), ECF No. 24, be DENIED.

Within seven (7) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response shall be filed within three (3) days of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida this 1st day of December 2023.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Kathleen M. Williams,
All Counsel of Record